# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | | |
|---|---|---|
| BRADLEY EGENBERG, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case Number: 2:21-cv-00026-JHE |
| | ) | |
| MAINSAIL DIGITAL, LLC, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER[1]

Plaintiff Bradley Egenberg ("Egenberg") initiated this action against Defendants Mainsail Digital, LLC ("Mainsail") and Douglass Moore ("Moore") by filing a Complaint in this Court. (Doc. 1). Egenberg, a minority member of Alliance Injury Group ("AIG") and Legal Management Solutions ("LMS") (collectively, the "Companies"), asserts claims against Mainsail, also a member of the Companies, and Moore, a third-party, arising out of conduct relating to the two Companies. (*See id.*). In response to the Complaint, Defendants collectively filed an Answer and Counterclaims against Egenberg. (Doc. 5). Count Three of Defendants' Counterclaims alleges a tortious interference claim against Egenberg. (*Id.* at 33). Egenberg moves to dismiss the tortious interference counterclaim, contending there is no allegation that he is a stranger to the AIG and LMS contracts with which he allegedly interfered. (Doc. 13). The motion is fully briefed and ripe for review. (Docs. 13 & 16). Because there are no allegations to support Egenberg being a stranger

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties have voluntarily consented to have a United States Magistrate Judge conduct any and all proceedings, including trial and the entry of final judgment. (Doc. 10).

to the contracts at issue, the motion to dismiss Count Three of the Counterclaim (doc. 13) is **GRANTED**.

## I. Standard of Review

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain "a short and plain statement of the claim showing the pleader is entitled to relief."  "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  Mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" are insufficient. *Iqbal*, 556 U.S. at 678.  (citations and internal quotation marks omitted).  "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement." *Id.* (citing *Twombly*, 550 U.S. at 557).

Rule 12(b)(6), Fed. R. Civ. P., permits dismissal when a complaint fails to state a claim upon which relief can be granted.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (citations and internal quotation marks omitted).  A complaint states a facially plausible claim for relief "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted).  The complaint must establish "more than a sheer possibility that a defendant has acted unlawfully." *Id. See also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level.").  Ultimately, this inquiry is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

## II. Factual Allegations[2]

The original lawsuit arises out of activities concerning the Companies, AIG and LMS. (Doc. 5 at 29, ¶10). Egenberg is a member of both AIG and LMS, holding a 25% interest in each company. (*Id.* at ¶¶11, 12 ). Defendant Mainsail[3] is also a member and holds the remaining 75% interest in both AIG and LMS. (*Id.* at ¶13). As a member, Egenberg, through voting power, maintains the right to direct and oversee AIG and LMS. (*Id.* at ¶ 39) (citing ALA. CODE § 10A-4A-4.07(b)(1)(A)).[4]

AIG and LMS held contracts with third-party law firms to perform work in exchange for consideration. (Doc. 5 at ¶48). The substance of the tortious interference claim is based on the allegation that "[w]hile a member of AIG and LMS, Egenberg contacted multiple clients and instructed them to discontinue doing business with AIG and LMS." (*Id.* at ¶49). Defendant Moore is not a member of AIG, LMS, or Mainsail. (*Id.* at ¶17). There are no further allegations regarding

---

[2] "When considering a motion to dismiss, all facts set forth in the complaint 'are to be accepted as true and the court limits its consideration to the pleadings and exhibits attached thereto.'" *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000) (quoting *GSW, Inc. v. Long Cnty.*, 999 F.2d 1508, 1510 (11th Cir. 1993)). In other words, the "facts" are taken directly from the complaint.

[3] Mainsail has two members, each with 50% interest in the company. (Doc. 5 at ¶15).

[4] Mainsail and Moore point out that, in his answer to their Counterclaim Complaint, Egenberg denies he has the right to control or oversee the Companies, he denies he can influence decisions of the companies, and he denies he can challenge the Companies' decisions through his voting power. (Doc. 16 at 7-8). However, at the motion to dismiss stage, all facts in the complaint are to be accepted as true. *See Grossman*, 225 F.3d at 1231 (quoting *GSW, Inc.*, 999 F.2d at 1510). Notably, Mainsail and Moore drafted the Counterclaim Complaint in which they assert Egenberg had such right of control, influence, and challenge through his voting power. (Doc. 5 at 32, ¶¶39-40).

the contracts at issue or Egenberg's actions in the Counterclaim Complaint. (*See* doc. 5).

## III. Analysis

### A. There Are No Allegations that Egenberg is a Stranger to Contractual Relationship.

To state a claim for intentional interference with a business relationship, the party asserting the claim must allege, *inter alia*, "that the [alleged wrongdoer] is a 'third party,' i.e., a 'stranger' to the contract with which the [individual] allegedly interfered." *Tom's Foods, Inc. v. Carn*, 896 So. 2d 443, 454 (Ala.2004) (citation omitted); *see White Sands Group, LLC v. PRS II, LLC*, 32 So. 3d 5, 14 (Ala. 2009). The alleged wrongdoer is not a stranger to a business or contractual relationship if he "has any beneficial or economic interest in, or control over, that relationship." *Tom's Food Inc.*, 896 So. 2d at 454 (citation omitted); *see also Waddell & Reed, Inc. v. United Investors Life Ins. Co.*, 875 So.2d 1143, 1157 (Ala.2003). Egenberg contends the tortious interference counterclaim must be dismissed because Mainsail and Moore cannot state a claim that he tortiously interfered with AIG and LMS's contracts because there are no allegations to support that Egenberg is not a stranger to those agreements—but, instead, the allegations show he is not a stranger because they establish he had a financial/economic interest in those contracts as a result of his membership interest in both AIG and LMS. (Doc. 13 at 2).

As Egenberg points out (doc. 13 at 5), there are no allegations to support that Egenberg is a third-party or a stranger to the AIG and LMS's contractual relationships with which he allegedly interfered. To the contrary, Mainsail and Moore allege Egenberg is a member of both AIG and LMS. (*See* doc. 5 at ¶11, 12). As a member of AIG and LMS, Egenberg would have an economic interest in AIG and LMS's contracts. *See Mitchell Co., Inc. v. Campus, III*, No. 08-0342-KD-C, 2009 WL 3527744, *11 (S.D. Ala. Oct. 23, 2009). ("Moreover, Saint is a managing member of both LLCs and so has an economic interest in the LLCs' relationships. Thus, under Alabama law

neither Saint nor TMC is a stranger to Campus' relationship with the LLCs, which is fatal to Campus' counterclaim.").

Mainsail and Moore argue that, even though Egenberg is a member of AIG and LMS, he is a stranger to the contractual relationships he is alleged to have interfered with. (Doc. 16 at 3). Specifically, they argue that Egenberg's financial interest in AIG and LMS is insufficient to negate his stranger status as it relates to the specific contractual relationships when he had no right of control or participating in the contracts at issue. (*Id.* at 6). They further argue that Egenberg did not offer any proof that he was not involved in drafting the contracts or that he was responsible for performing any duties under the contracts, that he brought in the clients that are parties to the contracts, or that he would express the terms or details of the specific contracts. (*Id.* at 5). This argument impermissibly flips the burden from the parties asserting the claim to the party defending the claim. The burden to state a claim is on Mainsail and Moore, as the parties asserting the tortious interference claim, to sufficiently allege Egenberg was a stranger to the contractal relationships at issue. *See Parsons*, 849 849 So. 2d at 937. Although Mainsail and Moore are correct, that the court should look at whether there are allegations Egenberg was a stranger to the contractual relationships at issue and not a stranger to AIG and LMS generally, they fail to point to any allegations in the counterclaim complaint that show they have alleged that Egenberg is a stranger to the contractual relationships or contracts at issue.

As outlined above, the case law plainly states the alleged wrongdoer "is a party in interest to a relationship if [he] has any beneficial or economic interest in, *or* control over, that relationship." *Waddell & Reed, Inc.*, 875 So. 2d at 1154. (emphasis added). The counterclaim complaint alleges Egenberg is a 25% member of both AIG and LMS, and the contractual relationships he allegedly interfered with were between those companies and third-party law firms

5

to perform work in exchange for consideration.  (Doc. 5 at ¶¶11, 12, 48).  The complaint also alleges that, as a member, Egenberg, through voting power, maintains the right to direct and oversee AIG and LMS.  (*Id*. at ¶ 39) (citing ALA. CODE § 10A-4A-4.07(b)(1)(A)).  Thus, even assuming that there *could be* some type of arrangement where Egenberg's economic interests were not impacted by the contracts at issue, Mainsail and Moore have not alleged any such facts in their counterclaim complaint. Thus, Mainsail and Moore have not alleged Egenberg is a stranger to the contractual relationships at issue.

### B. Stating an Interference Tort When the Alleged Wrongdoer is Not a "Stranger"

When the alleged wrongdoer is not a stranger to the contractual relationship, Alabama law permits a claim of intentional interference with business relationships against an individual officer or employee with regard to "business or contractual relations to which their corporation or employer is a party." *Perlman v. Shurett*, 567 So. 2d 1296, 1299 (Ala. 1990) (quoting *Hickman v. Winston Cty. Hosp. Bd*., 508 So. 2d 237, 241 (Ala. 1987) (Adams, J., concurring)).  However, such an intentional interference claim is only viable where the officer or employee "act[ed] outside their scope of employment and [acted] with actual malice." *Id.* (quoting *Hickman*, 508 So. 2d at 239). An action outside the scope of employment is the same as an action outside of the employee's scope of authority. *McGlathery v. Ala. A&M Univ.*, 105 So. 3d 437, 447 (Ala. Civ. App. 2012). And, "in order to show malice[, there must be] a strong showing of a pattern of interference," which requires "more than an isolated incident" of actions beyond the scope of the alleged interferer's employment. *Id.*  In response to the motion to dismiss, Mainsail and Moore do not argue for the application of such a tort, and there are no such allegations in their counterclaim complaint to support such a claim.

## IV. Conclusion

For the reasons stated above, the motion to dismiss counterclaim (doc. 13) is **GRANTED**.[5] Mainsail and Moore have not requested, in the alternative or otherwise, to amend their counterclaim complaint; however, nothing in this memorandum opinion and order is intended to prevent the parties from amending their pleadings as provided for in the Scheduling Order (doc. 12) and the Federal Rules of Civil Procedure.

DONE this 27th day of April, 2021.

_____
**JOHN H. ENGLAND, III**
UNITED STATES MAGISTRATE JUDGE

---

[5] Mainsail and Moore request oral argument. (Doc. 16 at 1). Because oral argument would not be beneficial to the resolution of this motion, the request is denied.